IN THE UNITED STATE DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, acting by and through Philadelphia District Attorney Lawrence S. Krasner<br><br>Plaintiff,<br><br>v.<br><br>AMERICA PAC and ELON MUSK,<br><br>Defendant. | : : : : : : : : : : : : : : : | Case No. 2:24-cv-05823-GJP |

## ANSWER TO EMERGENCY MOTION TO REMAND

### I. INTRODUCTION

In his Motion to Remand, the District Attorney attempts to portray his state court lawsuit as incorrectly removed to this Court. But removal is proper on two independent grounds.

First, removal is proper because a quintessential question of federal law is inextricably intertwined in the District Attorney's manufactured and phony "emergency." Indeed, in his effort to convince the state court that a preliminary injunction must be granted on an urgent basis, Paragraph 8 of his complaint firmly embraces federal law and jurisdiction. By tying himself to the November 5, 2024 General Election for President of the United States, and by connecting the purported illegal conduct to be restrained to a political effort that was and is "in

connection with a federal election," the District Attorney's real intentions are laid bare. The lawsuit manifests his desire to obtain a prior restraint of core political speech, protected by federal election law and the First Amendment, because the District Attorney personally disagrees with the speaker.

Second, diversity of citizenship exists because the District Attorney is not acting for the entire Commonwealth of Pennsylvania in this civil complaint, but rather, on behalf of himself and Philadelphia. His capacity to act is a legal question and is not subject to a factual dispute, and therefore it is proper to consider how other courts have viewed his capacity. This Court can and should take judicial notice of how the District Attorney himself has characterized his standing and capacity to act in Unfair Trade Practice Act matters (precisely the claim in this case), in legal briefings filed in other proceedings. The District Attorney has too frequently, and too publicly, argued that he does not represent the Commonwealth and only represents Philadelphia to possibly walk that argument back now.

The District Attorney wants this litigation to be a rushed stage play, and the attendant spectacle and attention that go with it. But this lawsuit belongs in federal court, where it can be decided soberly and in a deliberate fashion. The District Attorney's motion to remand should be denied.

**II. PROCEDURAL HISTORY AND ALLEGATIONS**

On October 28, 2024, Plaintiff Larry Krasner, in his official capacity as the District Attorney of Philadelphia (DA Krasner), commenced this matter against Defendants America PAC and Elon Musk in the Court of Common Pleas of

2

Philadelphia County, First Judicial District, Trial Division. (Case No. 03509). On October 30, 2024, Defendants removed this action to this Court pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. §§ 1331, 1332, 1441, and 1446. As explained in Defendants' Notice of Removal, jurisdiction in this Court is appropriate for two reasons: *first,* as plainly stated in the Complaint and each of his subsequent filings, DA Krasner's overriding objective is to sanction Defendants for expenditures and speech related to a federal election, which implicates substantial questions of federal law that are inherently within the province of the federal judiciary. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); *second*, because Defendants are not citizens of Pennsylvania and the amount in controversy exceeds $75,000, diversity jurisdiction was likewise proper under 28 U.S.C. § 1332.

DA Krasner responded on October 31, 2024, by filing with this Court an Emergency Motion to Remand, disputing federal court jurisdiction and requesting an immediate remand.

### III. ARGUMENT

#### A. DA Krasner's request for emergency remand underscores the significant federal question implicated.

By requesting emergency remand, Plaintiff all but concedes federal question jurisdiction over this matter. In his own words, the purported exigency is "stopping illegal activity that harms Philadelphians and undermines their free, fair, and final election[.]" Thus, to the extent an emergency exists here, it exists solely because the

3

Complaint raises substantial questions of federal law concerning Defendants' federally protected campaign expenditures and political speech.

Indeed, aside from the activities of a *federally*-regulated political action committee and the upcoming *federal* election for President of the United States, there is no other basis to argue an emergency exists. The issues raised in Defendants' removal papers, and the arguments made in opposition, present difficult and weighty issues of federalism, and touch on areas the federal government exclusively regulates—namely, political speech and spending in federal elections. This Court should not needlessly expedite disposition at the expense of full and fair consideration of these important issues.

### B. Because DA Krasner's claims raise substantial federal questions that are best resolved in a federal forum, remand is inappropriate.

As the Defendants explained in their Notice of Removal, because DA Krasner's state-law claims necessarily involve substantial questions of federal law jurisdiction is appropriate under *Grable*. Reduced to its essence, *Grable* reiterates the longstanding principle that, even where the cause of action may be predicated on state law, federal jurisdiction is appropriate where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Under such circumstances, the *Grable* Court relayed, defendants may avail themselves of

federal jurisdiction because of the "serious federal interest[s] in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.[1]

Although this species of federal-question jurisdiction has taken many forms, as the Eighth Circuit of Appeals has explained, "[t]he best example is *Grable* itself." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F4th. 703, 711 (8th Cir. 2023). To that end, a brief discussion of *Grable*'s background is appropriate. In *Grable*, the IRS (a federal agency) seized Grable's property to satisfy a tax lien, after which, Grable filed a state-law quiet title action, claiming that the IRS's failure to give personal notice of the seizure rendered the seizure inappropriate. *See Grable*, 545 U.S. at 310. Although the state-law quiet title action, standing on its own, had little to do with federal law, the Supreme Court held that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal

---

[1] Notably, although DA Krasner attempts to recast *Grable* as providing for "an exceedingly narrow basis for removal[,]" the authorities are to the contrary. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2022); *Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The Government's direct interest in the availability of a federal forum to vindicate its own administrative action made the question an important issue of federal law that sensibly belonged in a federal court." (alterations and quotations omitted) (quoting *Grable*)); *Merrell Dow Parms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986); *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983); *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) (discussing *Grable* in the context of "aviation accidents because of the dominant role that federal law plays in air transport").
    Indeed, this doctrine of federal question jurisdiction is based on nearly a century of precedent. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921) (recognizing that federal court jurisdiction is appropriate "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States")

courts, provided or assumed by Congress." *Grable*, 5454 U.S. at 310. Notably, in the years that have followed, the "national interest" aspect has emerged as one of the focal points of *Grable*'s jurisdictional analysis. *See Gunn*, *supra*.

Against this backdrop, DA Krasner's request for a remand cannot withstand scrutiny. As explained in Defendant's Notice of Removal, while ostensibly raising state law causes of action (namely public nuisance and consumer protection), DA Krasner's claims, as evident on the face of the Complaint, turn principally on the allegation that Defendants are somehow unlawfully interfering with a federal election. This central theme recurs throughout the Complaint. For example, Paragraph 8 of the Complaint alleges that "America PAC and Musk must be stopped, immediately, before the upcoming Presidential Election on November 5. That is because America PAC and Musk hatched their illegal lottery scheme to influence voters in that election." Indeed, although the Complaint insists that it does not concern federal election laws in Paragraph 9, that sentiment is immediately undermined by Paragraph 10, which states that, "[i]f not enjoined, [the Defendants] lottery scheme will irreparably harm Philadelphians – and others in Pennsylvania[] – and **tarnish the public's right to a free and fair election**." (Emphasis added). Once again, in Paragraphs 18 and 19, the Complaint avers that America PAC "is spending money in Pennsylvania targeted to influence Pennsylvania voters" and Elon Musk "has directed that substantial sums be spent in Philadelphia to influence Pennsylvania voters." In section (c) of Paragraph 86, the Plaintiff sums up the true intent of this politically motivated lawsuit:

> The lottery interferes with a public right to vote without undue influence and others injects illegal activity into the integrity of the electoral process. Pennsylvania voters, including voters in Philadelphia, have the right to public peace, public comfort, and public convenience to engage in the electoral process without interference from outside third parties offering the chance of a reward in exchange for providing personal information.

Plaintiffs then go further, arguing that Defendants' activities "further encourage[] pervasive conduct by other parties seeking to undermine the integrity of Pennsylvania's electoral process[,]" Compl. at ¶ 87, and "Defendants knew, or should have known, that their promotion and operation of an illegal lottery not authorized by state law would create a public nuisance by injecting instability into Pennsylvania's electoral process." *Id.* at ¶ 91.

Additionally, in the first subpart of the Complaint's factual allegations (which itself is titled "America PAC and Musk Target Pennsylvania to Influence Pennsylvania Voters") the Complaint provides a lengthy rendition of Defendants' campaign expenditures—all of which, notably, are legally protected expenditures and political speech. In this regard, Paragraph 21, for example, states that "[a]s of September 30, 2024, America PAC reported having spent $133,841,660 on independent expenditures to support or oppose 2024 federal candidates." Paragraph 22 then continues, "[i]n the daily reports filed since October 21, 2024, America PAC has disclosed millions of dollars in additional spending on political communications." Next, Paragraph 23 avers that, "[o]n October 24, 2024, the New York Times reported, 'Mr. Musk, the leader of Space X, Tesla and X, has already poured $75 million into a pro-Trump super PAC called America PAC,' and is

7

accelerating his spending in this final stretch before Election Day." And Paragraph 25 also specifically discusses Defendants' use of the social media platform X, owned by Defendant Elon Musk, on which Defendants purportedly have "spent tens of thousands of dollars [in] advertising . . . targeting swing state voters, alongside Mr. Musk's own repeated endorsements of Mr. Trump on X." ¶ 25.

In short, the sum and substance of DA Krasner's material allegations demonstrates that the Complaint, in truth, has little to do with state-law claims of nuisance and consumer protection. Rather, although disguised as state law claims, the Complaint's focus is to prevent Defendants' purported "interference" with the forthcoming federal Presidential Election by any means, and to do so—in the Complaint's own words—"immediately[] before the upcoming Presidential Election on November 5." Compl. at ¶ 8.

The Complaint also narrowed its focus to two of the Defendants' election-related activities with which DA Krasner disagrees—independent expenditures to influence campaigns for federal office and the core political speech *via* petition gathering—both of which raise significant questions of federal law that are within the exclusive province of this Court.

Indeed, taking DA Krasner at his own word, that much is abundantly clear from the face of the Complaint: Plaintiff is seeking emergency relief which, in and of itself, would require judicial intervention into the progress of an ongoing federal election. This, however, a state court cannot do. The issue of whether a federal political action committee like America PAC—which is focused on making

8

independent expenditures to influence campaigns for federal office, not state or local offices—is exclusively governed by federal law and the First Amendment to the United States Constitution. Indeed, Congress has clearly vested the Federal Election Commission with the exclusive authority to regulate federal elections, *see* 52 U.S.C. § 30143(a) (FECA preempts state laws "with respect to election to Federal office.").

As shown, Plaintiff makes the case that (in Paragraph 21) that 100% of the independent expenditures listed in Exhibit 2 were federally regulated disbursements subject to the Federal Election Campaign Act of 1971, as amended, and its implementing regulations. However, there is no question that America PAC's independent expenditures to influence campaigns for federal office and core political speech are entitled to First Amendment protections. Thus, the allegations in the Complaint necessarily raise federal questions that are substantial and disputed—*i.e.*, the legality of the Defendants' campaign expenditures and political speech.

Further, because this matter involves claims that are inherently federal in nature, far from undermining the "congressionally approved balance of federal and state judicial responsibilities[,]" removal would restore the balance. *Grable*, 545 U.S. at 314. Indeed, allegations of interference in a federal election for President of the United States, as explained above, necessarily are matters for the federal judiciary.

9

And on that point, most important to this matter is that that there is undoubtedly a **significant "national interest"** in providing a federal forum for disputes concerning the integrity of an election for the President of the United States of America. The elaborate contours of FECA alone demonstrate this national interest, and the concerns or risks pursuant to FECA and the First Amendment are at their zenith in an election for the President of the United States of America. As such, the concerns inherent in this case certainly satisfy the requirements of *Grable*, and federal court jurisdiction, therefore, is proper.[2]

In his emergency motion, DA Krasner alleges that "[f]ederal question jurisdiction cannot possibly exist over this dispute because: "(1) there are no federal law issues to be determined; instead, this matter involves two state-law claims concerning state-law issues; (2) the Complaint expressly disclaims that the matter concerns any federal law issues; and (3) Defendants grossly misread *Grable*." Remand Mot. at 7. Respectfully, these claims make no sense.

As to the first two allegations, DA Krasner perplexingly misunderstands that the entire purpose of the *Grable* jurisdiction standard was developed for circumstances where **strictly state-law claims**, nonetheless, raise substantial issues of federal law. Thus, the fact that the Complaint "involves two state-law claims concerning state-law issues" has exactly zero bearing on whether *Grable*

---

[2] If there was any doubt that to the Complaint's true intent, moreover, a letter from District Attorney's counsel to the Honorable Angelo J. Foglietta presiding over the matter in the Court of Common Pleas of Philadelphia County states that "[t]his is an election related matter and the Presidential Election is only a week away."

10

confers federal jurisdiction. Further, in attempting to mask a federal issue behind some articulation of a state-law claim, a plaintiff's complaint inevitably will include some assertion—as DA Krasner included in Paragraph 9 of the Complaint—that there are "no federal issues involved" in the claims raised. But simply "disclaiming" that an action does not involve federal law does not make it so. Again, the *Grable* standard was established for precisely this purpose. And, as simply one example of DA Krasner's contradictory position, Paragraphs 8 and 10 of the Complaint that surround the disclaimer in Paragraph 9 prove that disclaimer to be baseless. *See*, *supra* pg. 6. Rather, as explained above, the Complaint is rife with references to what DA Krasner considers to be election interference. As *Grable* and other relevant precedent indicate, however, such claims are necessarily exclusive to the federal judiciary and are not meant to be fought out in state court via faux claims of public nuisance and consumer protection.

Thus, because the claims at issue in this case can be characterized as none other than federal election interference allegations masked behind disingenuous state-law nuisance and consumer protection allegations, federal jurisdiction is proper under *Grable*. This is particularly so where DA Krasner's claims threaten the federal government's national interest in the management of a federal election for President of the United States of America.

### C. Even if this Court were to conclude that the federal question is not sufficiently significant, remand is nevertheless inappropriate under settled principles of diversity jurisdiction.

DA Krasner argues that diversity jurisdiction does not exist because: (1) he is not a "citizen" of the Commonwealth under *Moor v. Cty. of Alameda*, 411 U.S. 693 (1973); and (2) the amount in controversy does not exceed $75,000. But neither argument has merit.

*First*, as explained in Defendants' removal notice, mere months ago, the Commonwealth Court drew a clear distinction between the divergent roles of a district attorney in criminal and civil matters. *Commonwealth by and through Krasner v. Attorney General*, 309 A.3d 265, 276 (Pa. Cmwlth. 2024). As *Krasner* makes clear, in civil matters, a district attorney's authority does not act on behalf of the state, but rather, a specific county. *See, e.g. id.* at 277-78 ("Although district attorneys may file suit in the name of the Commonwealth, their enforcement powers extend only to such matters 'which arise in the county for which the district attorney is elected.'" (quoting 16 P.S. § 1402(a)). Unable to squarely address this central point, DA Krasner attempts to draw a number of meaningless distinctions between that decision and the present matter—namely, that *Krasner* did not decide whether a district attorney is a "citizen" for purposes of removal and diversity jurisdiction. That is undoubtedly true. And it is also irrelevant. What *Krasner* **did** decide—and what is fatal to DA Krasner's reliance on *Moor*—is that a district attorney does not acts as the representative of his constituents, rather than the

Commonwealth as a whole, in civil matters. Try as he might, DA Krasner cannot escape the lynchpin of this holding.

Indeed, this Court need not take Defendants word for it. In his brief to the Commonwealth Court in the *Krasner* matter, DA Krasner—through the very same counsel representing him in this matter—helpfully briefed the issue and agreed that, in UTPCPL claims, the Philadelphia District Attorney is not the Commonwealth. That point is made throughout his submission, but to take just one example, DA Krasner argued:

> The District Attorney['s] UTPCPL claims are brought by the District Attorney[] to protect [his] respective electorate[]. Contrary to Respondents' assumption, those claims neither belong to the Commonwealth, nor are brought on behalf of the Commonwealth or by the Commonwealth, simply by virtue of the fact that they are filed 'in the name of the Commonwealth.'

Br. of Appellant, *Commonwealth by and through Krasner v. Attorney General*, 2022 WL 22575839, at *11 (Pa. Cmwlth) (Appellate Brief). Driving the point home, DA Krasner further argued: "[t]he mere fact that the District Attorneys' actions were brought 'in the name of the Commonwealth', as required by the UTPCPL, does not render those actions ones on behalf of the Commonwealth." *Id.* at *1. "Rather, the District Attorney[], as plaintiff[], brought civil law enforcement actions 'in the name of the Commonwealth,' as [Krasner is] authorized and required to do by the UTPCPL, to protect the people in [his] respective jurisdiction[] from Defendants' unfair trade practices. *Id.* at *2.

13

The fact that the plaintiff here is not "the Commonwealth" is further apparent from the Complaint itself, which refers to the District Attorney—and not the Commonwealth—no less than *twelve* times, *see e.g.* Compl. ¶¶ 6-7, 10, 12-13, 15-17, 74, 92-93, and 113.  And again, the sworn verification is signed by Larry Krasner, not in his purported capacity as representing the Commonwealth of Pennsylvania, but rather, as the "District Attorney of Philadelphia."  In short, because the plaintiff here is not the Commonwealth, DA Krasner is a citizen for purposes of diversity jurisdiction.

*Second*, DA Krasner's assertion that the amount in controversy does not exceed $75,000 is meritless. In determining whether the threshold for invoking diversity jurisdiction has been satisfied, federal courts do not look to whether the Complaint has expressly demanded over $75,000, but rather, whether a defendant's liability could exceed that amount if the claims are successful.  Under the UTCPCL, recovery of $1,000 per violation is permitted by statute and, thus, DA Krasner's failure to expressly request such an award is immaterial.  Indeed, that is particularly true since the Complaint—contrary to DA Krasner's representation to this Court—expressly leaves open the possibility that statutory damages would be assessed against Defendants if the UTPCPL claim were to succeed.  *See* Count II, Wherefore Cl. (requesting "such other and further relief as the Court deems just and proper").

## IV. CONCLUSION

In short, for the reasons set forth above, this Court, has jurisdiction over Plaintiff's claims by virtue of Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1331; thus, this action is properly removable to this Court. Finally, the Defendants will give written notice of the filing of this Notice to the adverse parties as required by 28 U.S.C. § 1446(d), and a copy of this notice will be filed with the Clerk of the Court of Common Pleas of Philadelphia County, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants respectfully request that the above-captioned action be removed from the Court of Common Pleas of Philadelphia County, to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Dated: November 1, 2024

| | |
|---|---|
| Chris Gober (*pro hac vice pending*) | /s/ Matthew H. Haverstick |
| Andy Taylor (*pro hac vice pending*) | Matthew H. Haverstick (No.85072) |
| THE GOBER GROUP PLLC | Shohin H. Vance (No. 323551) |
| 14425 Falcon Head Blvd. E-100 | KLEINBARD LLC |
| Austin, TX 78738 | Three Logan Square |
| Ph: 512-354-1787 | 1717 Arch Street, 5th Floor |
| Eml: cgober@vantage.network | Philadelphia, PA 19103 |
| ataylor@vantage.network | Ph: 215-568-2000 |
| | Fax: 215-568-0140 |
| | Eml: mahverstick@kleinbard.com |
| | svance@kleinbard.com |

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Matthew H. Haverstick, certify that on November 1, 2024, a true and correct copy of Defendants' Answer to Plaintiff's Emergency Motion to Remand was filed electronically and is available for viewing and downloading from the ECF system.

Dated: November 1, 2024          /s/ Matthew H. Haverstick
                                                       Matthew H. Haverstick