## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA by and through
Lawrence S. Krasner, District Attorney of
the County of Philadelphia,

                    *Plaintiff,*

    v.

ELON MUSK, *et. al.*,

                    *Defendants.*

CIVIL ACTION

NO. 24-5823

Pappert, J.                                                    November 1, 2024

### MEMORANDUM

On October 28, Philadelphia District Attorney Lawrence Krasner, acting on behalf of the Commonwealth of Pennsylvania, filed this lawsuit in the Philadelphia County Court of Common Pleas.  Krasner alleges that America PAC and its founder Elon Musk, by virtue of Mr. Musk's awarding selected registered voters $1 million dollars in exchange for signing America PAC's "Petition in Favor of Free Speech and the Right to Bear Arms," is violating Pennsylvania's Lottery Law and Unfair Trade Practices and Consumer Protection Law.  Krasner seeks to enjoin the Defendants from continuing with their program.

Mr. Musk's efforts come within the context of next week's presidential election and his support for former President Trump, something the lawsuit focuses on.  For example, in addition to claiming the Defendants violated state laws, Krasner emphasizes the need, among other things, to prevent interference with the presidential election and ensure that it is "free, fair and final."  Given these goals and the

anticipated argument from the Defendants that the lawsuit targets their core political speech, Krasner anticipated an attempt to remove the case to federal court.  To blunt such an effort, Krasner claims in his papers the case presents no federal question, that a federal court would not have jurisdiction over the case and that "any effort to remove this matter to federal court would be frivolous and subject to remand."

Late in the evening of October 30, the defendants did what Krasner suspected they might and filed their notice of removal to this Court.  (ECF No. 1.)  Krasner waited until after 4 p.m. the following day to file his "emergency" motion to remand the case back to the common pleas court.  (ECF No. 3.)  Immediately upon receiving Krasner's motion, the Court ordered the Defendants to respond by this morning.  (ECF No. 4.)

Having now considered the parties' submissions, the Court grants the motion and remands the case back to the Court of Common Pleas.

## I

Federal courts are of limited jurisdiction, "possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013).  A defendant attempting to remove a case from state court to federal court bears the burden of establishing the federal court's subject matter jurisdiction.  *Samuel Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *see also* 28 U.S.C. § 1441(a). The case must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c). Removal statutes are to be "strictly construed, with all doubts to be resolved in favor of remand." *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009).  Defendants based removal here on both federal question and diversity jurisdiction, but neither applies.

## II

A district court has "federal question" jurisdiction when a case "aris[es] under" federal law.  28 U.S.C. § 1331.  Most typically, "a case arises under federal law when federal law creates the cause of action asserted."  *Gunn*, 568 U.S. at 257.  Pennsylvania law creates the two causes of action asserted here.  *See* 18 Pa. Cons. Stat. § 5512; 73 Pa. Cons. Stat. §§ 201–4.  Defendants argue that this case falls into the "special and small category" of state-law cases that nevertheless "arise under" federal law when they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Gunn*, 568 U.S. at 258 (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

A state-law claim necessarily raises a federal question when the plaintiff must "win on an issue of federal law" in order to "prove some element" of the claim.  *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied sub nom. Chevron Corp. v. City of Hoboken, New Jersey*, 143 S. Ct. 2483 (2023).  In *Grable*, for example, the plaintiff had to prove that the IRS failed "to give it adequate notice, as defined by federal law" in order to prove "an essential element of its quiet title claim."  545 U.S. at 314–15.  In *Gunn*, the plaintiff had to prove that with competent lawyering, "he would have prevailed in [a prior] federal patent infringement case" in order to satisfy an element of his state-law legal malpractice claim.  568 U.S. at 259.  And in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), the plaintiff-shareholder had to show that the federal government's issuance of certain bonds was unconstitutional in

order to prove that state law prohibited the defendant-bank from purchasing those bonds. *Id.* at 312.

Defendants have not identified any question of federal law that must be resolved in Plaintiff's favor in order to prove either state-law claim. Defendants argue the Complaint's references to "the forthcoming Federal Presidential Election" show the lawsuit necessarily raises questions of federal law. (Def. Resp. at 8, ECF No. 7 (quoting Compl. ¶ 8, Ex. A, ECF No. 1.)) But federal question jurisdiction does not turn on a plaintiff's motivations in filing suit; it turns on whether the legal issues arising from the claims originate in federal or state law.[1]

## III

Defendants' assertion of diversity jurisdiction fares no better. Federal courts have subject matter jurisdiction over state-law claims when there is complete diversity of citizenship between the litigants and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Generally, "[t]here is no question that a State is not a citizen for purposes of [] diversity jurisdiction." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973). A political subdivision of the state, however, is a citizen of the state for diversity purposes "unless it is simply the arm or alter ego of the State." *Id.* (internal quotation omitted). In deciding whether a political subdivision is an alter ego of the state, federal courts must look to state law. *Id.* at 719-20.

---

[1]    Defendants also say this case belongs in federal court because they intend to raise defenses under federal election law and the First Amendment. (Def. Resp. at 8-9.) But a suit "arises under [federal law] only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Thus, "a defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Mottley*, 211 U.S. 149).

In Pennsylvania, a district attorney represents the Commonwealth as the "chief law enforcement officer for the county in which he is elected."  71 Pa Cons. Stat. § 732–206.  The Defendants admit that district attorneys are alter egos of the Commonwealth in criminal cases but contend that the opposite is true when bringing civil suits. (Notice of Removal at 7-8.)

Not so.  District attorneys, where so empowered, may file suit in the name of the Commonwealth.  *Commonwealth v. AG of Commonwealth*, 309 A.3d 265, 275-78 (Pa. Commw. Ct. 2024).[2]  Indeed, Pennsylvania's Unfair Trade Practices and Consumer Protection Law states that district attorneys "may bring an action in the name of the Commonwealth."  73 Pa. Cons. Stat. § 201–4; *see also Commonwealth v. AG of Commonwealth*, 309 A.3d at 273 ("Although district attorneys may bring suit under the UTPCPL, the true party in interest is the Commonwealth, and not the local jurisdiction.").  District attorneys are the alter egos of the Commonwealth and are not citizens for diversity jurisdiction purposes.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

---

[2]     District attorneys have autonomy to bring civil suits, but "their enforcement powers extend only to such matters 'which arise in the county for which the district attorney is elected.'"  *Id.* (quoting 16 Pa. Cons. Stat. § 1402(a)).  Defendants cite this as evidence that district attorneys are county, and not state, officials. (Def. Resp. at 12.)  But that misreads the law.  That district attorneys' authority only extends to the borders of their respective counties does not mean they do not act as arms of the state.  Indeed, the entire purpose of the alter ego inquiry is to determine whether a *political subdivision*—necessarily something less than a statewide entity—nonetheless constitutes a state actor.